Case 15-1202 Robert Zucker v. City of Farmington Hills et al. Oral argument not to exceed 15 minutes per side. Ms. Miller for the appellant. Good afternoon, Your Honors. May it please the Most Honorable Court, receive Miller appearing on behalf of the plaintiff's appellant, Mr. Robert Zucker. I'd like to reserve five minutes of time for you. You may. Thank you. Your Honors, this matter arises from an incident in 2009 when Mr. Robert Zucker, a then 66-year-old man, was in his home. Mr. Zucker is a gun Mr. Zucker had a history in the 80s of bipolar disorder. Mr. Zucker called the Farmington Hills Police Department, which is the defense in this matter, two weeks prior to the incident in question to report a apparent break-in into his apartment. At that time, Officer Titterington responded and didn't make full entry into the apartment but had concluded that no one broke in. He didn't even go to the second entry to the apartment. Two weeks after that incident, there was a complaint of the residents below Mr. Zucker's apartment of leaking water and maintenance from the apartment complex wanted to make entry to find out what was causing the leak. Mr. Zucker opened the door and, according to him, three men made forcible entry, toppled him off balance, he leaned against the hallway. He was a little And when they left, he was ashamed of his living conditions. He wanted to clean them up, he didn't want to get evicted. So his daughter was called by, I believe Officer Titterington spoke with the management complex and raised an issue of there was a concern of his living conditions, the ability to care for himself. So his daughter came to visit and when she arrived, he was in the process of cleaning his house because he wanted to make sure it was tidy. And he advised her that these men had come into his home and that he was afraid and he let her know, I have a gun and here it is for our protection. She had never seen a gun before and she is actively bipolar. So she fled the apartment. She said, you know, I'm not going to sit here tonight with you, Dad. And she went to the apartment manager. The apartment manager decided to call the police department and there's a 9-1-1 transcript of the recording. The information that the officers had available to them at the time was that there was no threat. Mr. Zucker had a gun but he was not engaged in any threatening behavior and he had no history of violence. In this case, the reason we're here today is because Plaintiff's entire case was dismissed on summary judgment and the judge who's presiding over the case now is Judith Levy. She's a newly appointed judge. Previously, it had been assigned to Julian A. Cook and the dispositive motions had been fully briefed and they were set to be determined without oral argument. Judith Levy was assigned, she called us in and she decided to have oral argument. At the time of oral argument, the trial court raised issues that were not raised by the defendant in their motion, number one. Number two, she engaged in improper fact-finding and credibility determinations and number three, she construed disputed material issues of fact in a light favorable to the defendants, the moving party, and that's improper as a matter of the law. Those are issues that I raised in the motion for reconsideration. So are you challenging the summary judgment or are you challenging the denial of the motion for reconsideration? Both. I tried to flesh out the arguments more accurately in the motion for reconsideration and the judge again denied. Only this time, she alleged, for the first time to my knowledge, that the due process claim had been abandoned. And in my view, due process component of the 14th Amendment, which is the vehicle through which a state may be held liable for constitutional rights violations, cannot be abandoned like that. When we were at oral argument, she asked me specifically, are you dismissing these state claims? I said yes. And she said, what about your due process? There's a distinction between substantive and procedural due process. And I said, Your Honor, I'm going to dismiss all of the state claims. Anything is going to be duplicative. We're relying on 42 U.S.C. 1983 for 4th and 14th Amendment violation because at the time the officer seized Mr. Zucker and pulled him to the ground, there was no immediate threat. There was no threat at all. They arrived to determine whether or not he needed assistance. Without even seeing him or speaking to him or making any type of investigation, they pulled him to the ground. They handcuffed him. They said, do you have a gun? He said, yeah, it's in my apartment. They took his keys and without a warrant, they went into his home and they took photographs to try to justify with the gun. Then Officer Chitterington broke out. In the time that they came to the apartment, I know you said that there was no threat. Didn't the call to the police indicate that there was, at least in the mind of the caller, received a threat? So they had that. No, Your Honor. In fact, she was asked, does he threaten you? And she said, no. That's in the transcript. And the officers in the radio traffic amongst themselves, does he have a gun? Yeah, he has a gun, but he's not threatening it or anything. They knew. She says he decides I'm the enemy and I'm sending people to and he already threatened me before I came to Michigan. I don't believe she said me, but he already threatened before I came to Michigan. And we don't know what that means. Couldn't a reasonable officer perceive that that's threatening? A reasonable officer may perceive her statement to believe that she might have been threatened. But when they came on the scene and they see a 66-year-old man and take him to the ground, and first of all, he can resist unlawful conduct of law enforcement officers. That is an inherent common law right that we have. So when he didn't want to go with the officer, he turned to go home. They even said the only reason we tased him was to prevent him from going back to his home, where he may get access to a gun. He owns a gun, that's okay. He's got a right to have a gun. He never threatened anyone. He never said he was going to harm himself or others. And Officer Titterington, under penalty of perjury, put in the petition, threatening to harm himself and others, threatening to kill people with a gun. And the judge already had predetermined this case because in oral argument she said, what about the 9-1-1 call where he's got a gun and he's going to kill me? And I said, judge, nobody said that. Nobody said that. When the officer came and saw that there was no imminent threat, nobody was doing anything wrong, Mr. Zucker had a right to go home, finish cleaning his apartment, do whatever it is he wanted to do. So you said that when the officers came and they saw that there was really nothing going on, could they make that determination just on their observation of Mr. Zucker on the exterior of the apartment? Certainly. They could have asked him, do you have a gun? Are you intending to hurt yourself? Are you intending to hurt somebody? People are entitled to have a gun to protect their homes and families, and he never threatened anyone. And yet, they pulled him to the ground, they taped him. Well, if he has a gun on him and appears to be reaching for it, which is what they claim, there was a radio call which said he clearly has a gun. Arguably it doesn't say he has it on him, but they asked him to show his hands, and he didn't do it according to their testimony. Yes, Your Honor. Respectfully... And I didn't see that it was pointed out to the court where he had said anything to the contrary. That's kind of the crucial point. Your Honor, he didn't say anything to the officers. He just wanted to go home. And what the officers had, the knowledge that they actually had... No, but I didn't say whether he said something. I said whether something was pointed... For example, did he have a deposition or something that says, oh yes, I showed my hands as soon as they asked me, and was that pointed out to the court? And that was my saying part. No, sir. And in fact, Mr. Zucker's testimony is that he was not asked to show his hands. And the police officers in the 911 dispatch concede that the reason they tased him was to stop him from entering his home. Not because they perceived an imminent threat of harm, but to stop him from going home. But they said that he might have been going into the home to get a gun. Where he could access his gun. And how is that a problem? Well, if the police are there to investigate and somebody is going in to get a gun, how is that not a problem? This is a problem from the officer's perspective. Because they had no information that there was any threat. All the information they had was there's a gun owner, there's a scared daughter who, by their own words, is a basket case. They didn't know what was happening. They had to go and investigate. And rather than investigate, they pulled him to the ground, handcuffed him, tased him, made an unlawful entry to photograph his living conditions to try and justify what they had done after the fact. Most glaring are the false statements in the petition. And when Officer Titterington was asked specifically, did you or anyone tell you, did you personally observe or did anyone tell you he threatened to harm himself? No. He threatened to harm others? No. That he was waving the gun around? No. And when you said in the petition, did you mean the motion for summary judgment? No, sir. There was a petition for hospitalization. Oh, to the state house. Correct, which was replete with falsehoods. If they wanted to say we were concerned about his health and his ability to care for himself, why didn't they put that in the petition? We've got 17 seconds left. I'm going to reserve. Okay. Do you have any questions? No questions. You'll have five minutes and 17 seconds. Thank you. Good afternoon, Your Honors. Callie Henderson, appearing on behalf of the defendants, the City of Farmington Hills, and the individual officers. Your Honors, plaintiff has attempted to question the summary judgment ruling on a matter of perception. Plaintiff believes the fact should be perceived one way, but when looked at under the standard of a reasonable officer on the scene under these circumstances at the time, it's clear that not only did they have probable cause to seize Mr. Zucker under this circuit's standard for mental health seizures, but they acted reasonably under the circumstances. Now, plaintiff has just given a recitation of the facts that had a few errors in it. So, the Farmington Hills Police Department had had interactions with Mr. Zucker for a couple weeks leading up to this incident. The incident happened on August 13th, and in the two weeks prior, Mr. Zucker had appeared at the Farmington Hills Police Department making racial comments, filing police reports that were found to be false. And in the week prior, Officer Titterington, who is a defendant in this matter and was the first to make contact with Mr. Zucker on the day of the incident, he actually did come out and investigate a reported breaking and entering by Mr. Zucker. He was at the front door of Mr. Zucker's apartment as he testified. He never went through the entire apartment, but that's because he looked at the conditions of the apartment, which was in complete disarray. And based on his conversation that he had with Mr. Zucker, he was concerned for Mr. Zucker's well-being. So, he reached out to the apartment. He reached out to his daughter. That's why his daughter was there on the date of the incident. She had flown in to check on her father. Now, on the actual date of the incident, the property maintenance manager, Mr. David Cole, had been to the property because of the water leak. Water had leaked into the apartment below. They had seen this water leak. Planner's daughter then comes back because maintenance needs to get back in, and she's going to tell Mr. Zucker that. And she's speaking to her father. He shows her that he has a gun, tells her, as he testified, that it's to protect his family and himself. That's what he says regarding the gun. He's carrying it around in a satchel, a bag at the time, and she had never seen him with a gun before. And I know Planner represents that she says she's never seen a gun in her life. However, her statement was actually that she had never seen a gun. She had always heard that he had a gun in the past, but had never actually seen a gun. So that's the context of her statement that was made to the dispatch and to the officers at the scene, which is important because Planner likes to perceive this as a matter that she was just scared because she had never seen a gun in her life. And so she was just overreacting to seeing a gun for the first time. However, her concern was that she knew that her father had bipolar disorder. There are reports that he had been sick at the time, as that's what his brother actually conveyed to the dispatch at the time of the incident. And so having seen him with a gun and the conditions that he was living in, there was water, food, he had stuffed his toilets full of cardboard and other food such that those were overflowing and not working anymore. And so when the officers arrive at the scene, that's the situation that they're walking into. They consult with the daughter and the property manager who confirms what Officer Titterington saw a week prior. Your Honor, Plank has first not pled any claim in relation to the actual entry afterwards. Planner's claim, as she has pleaded and argued it in the lower court, is the issue with the actual seizure of Mr. Zucker. And in regards to the condition of the apartment, the officers had knowledge of it at the time. It had been reported to them, not only through Officer Titterington seeing it himself the week before, but that the property manager and the daughter confirmed that that was still the state of the apartment on the day of the incident, especially the water leak, the conditions had obviously worsened. So that was a valid consideration of the officers. Let's go to the confrontation at his doorway. Yes. Because as I understand it, the grand juvie officers had reason for concern, they had there is this first physical confrontation where they say he's turning around, reaching in his jacket, maybe going for the gun. I take it his position is that none of that is true. And my question to you is, how well supported is that? That is, normally, if a citizen says, I'm just standing there and the cop hits me, the cop can say contrary, but that's a genuine issue of material fact, if he has at least a well-supported deposition or affidavit of his view. So what's your understanding of the record of that was before the district judge, as opposed to what a lawyer or a riefer may say now? Yes, Your Honor. And I believe you're getting to the fact that plaintiff's counsel down below never directed the court to plaintiff's testimony where he disputed the officer's version of what took place. In our motion for summary judgment, we argued that there were certain facts that were undisputed up until Officer Titterington approached Mr. Zucker at his door. And in plaintiff's response brief, she then agreed with those facts and never put forth any other facts to dispute what we put forth. There's actually a paragraph where... You said until he approaches him at the door, but I want to focus on... Yes. I'm sorry. Oh, no, Your Honor, I'm sorry. She didn't dispute even what happened at the door. What the facts... That's something that maybe I misunderstood. Oh, I apologize, Your Honor. I believe what happened down below is that she never pointed in the records to any facts disputing or citing to Mr. Zucker's testimony where he disputes how the incident went down after Officer Titterington approached him, whereas we had cited testimony of the officers explaining how they testified in regards to the situation, and she never cited any testimony disputing that. She agreed with that and operated under those facts. But there is some difference in Mr. Zucker's position, correct? It looked controversial, although it may not have been raised in the motion, is that right? Yes, Your Honor. He has testified at certain points as to how the incident happened. However, there have been many variances in their presentation of the facts, and especially the most important would be in response to our summary motion, where that testimony was never cited. And that's important because when we're looking at this from the perspective of the district court in deciding not to consider this new evidence that was not pointed to until the motion for reconsideration, we're reviewing that for an abuse of discretion. And it was not an abuse of discretion for the district court to refuse to look at that evidence because the district court, viewing this motion, saw that in response to our summary motion, Plaintiff had waived many of her arguments. She failed to respond to several of our arguments regarding her state law claims and other claims. And so when the hearing started on the summary motion, the judge asked Plaintiff what claims specifically were being waived and went through a list, which included the due process claim, although I'm not exactly sure I understand Plaintiff's confusion in regards to that, because she has filed an affidavit with this court stating that she had never actually pled a due process claim, but then asked questions at a deposition to put us on notice. But that's besides this issue. So when the district court is looking at this from the perspective that she waived these other issues, there's other testimony of Mr. Zucker that would have disputed her claim against Officer Allen, because Mr. Zucker has actually testified that it wasn't Officer Allen that tased him, it was someone else and Officer Allen was covering up for him. So she had selected which testimony to rely on, and that's the representation made to the court. And this court has long held that a party is bound by their attorney's conduct, and that attorney error... Give me that again about who tased what, because I thought their position was that this Tomasovich Morton was the one that tased. Am I wrong? No, Your Honor, I believe that Officer Tomasovich Morton applied a knee drop. A knee drop. That's Plaintiff's allegation. You're correct. Yes. And Officer Allen was what did the tasing. And so Officer Allen has testified that he did deploy his taser when he saw Mr. Zucker struggling with Officer Titterington on the ground, a fact that was never disputed by Plaintiff, in his representations to the lower court. And that's the only record that the district court had to go on. When you say record, I thought there were two separate concepts. Let's make sure we got this straight. I apologize. One is what is in the deposition, which is part of the record, but might not have been presented to the district court in briefing or in that. And please, as I understand it, somewhere in the deposition, he does say he was already in handcuffs and acid before the knee drop and before the tase. Is that correct? Yes, Your Honor, that is correct. It is within the deposition, but the court was never directed to that testimony by Plaintiff. And Plaintiff represented that. It was certainly not directed to it at the time of the summary judgment motion and the response. Then on the motion for reconsideration, as I read it at page four, there is some text and there is a citation, footnotes five and six, but there's no quotation from it at that point. Is that fair? Yes, Your Honor. It's in a footnote. Yes. It's a minor reference. There's no text there where the judge would say, oh, that's what he said. Yes, it was just... I'll ask the opposing counsel on the rebuttal if that's also accurate, but that was what I was focusing on. Yes, Your Honor, that is how I read it as well. I believe it was in a footnote and that was the only reference to it. There was no real argument in regards to that testimony. So for the district court to assume that and make this argument for Plaintiff where it's not being made by Plaintiff, there was absolutely no reason. The district court was under no duty to make an argument that Plaintiff wasn't making or cite a testimony that Plaintiff wasn't relying on where Plaintiff had clearly represented that he was picking and choosing which parts of his testimony he wished to rely on. So for the district court to impute any other testimony to his case would have been improper. And I think the other larger issue in this case is the issue that Plaintiff has raised in regards to the Farmington Hills policy in regards to mental health commitments where Plaintiff has argued that the policy is unconstitutional because it does not comply with the Michigan Mental Health Code. However, Plaintiff has not cited any testimony, even when asked... I'm sorry, cited any case law, even when asked by the district court for any support for a position that the Michigan Mental Health Code was meant to embrace constitutional standards. And the policy itself actually complies with the standards that this court has laid out in Monday v. Ouellette, which is that an officer must have probable cause to believe that an individual presents a probability or substantial likelihood of harm to himself or others. I want to go back just a moment. Clarity, please. Yes. In this case, as I understand it, you're saying that there was no human issue on the parole pact because Plaintiff, at a somewhat different stage, did not present any statement or any evidence that the tasing occurred after the handcuff. He didn't present evidence that the tasing occurred after the handcuff. But if he had presented evidence or a statement that the tasing occurred prior to, I mean I know I've got the results of these, but you understand what I'm asking. Yes, Your Honor. I believe I understand your question. And I think the issue there would have been, well, there are actually a couple of things that he didn't present to the lower court that could have created questions of that, but he didn't rely on those. He chose not to. And that would have been that, one, he wasn't resisting the officers at the time, and then also in regards to when he was handcuffed. Those would all have been with respect to the excessive force claim that he probably caused. Yes, Your Honor. So he didn't present any evidence in those regards. So had the handcuffing occurred at any point, then if he was still resisting at the time, depending on the circumstances and the evidence he had presented, then the excessive force would have had to have been analyzed under those circumstances. So unless the panel has any more questions. No, thank you. Thank you, Your Honors. We have your remaining time for rebuttal. Thank you. Briefly, Your Honors, the original brief was authored for Julian Abel Cooke. He knew this case inside out. If there was any missteps that I may have made in failing to present evidence, it was because he knew this case. It was regardless of whether the judge knows or doesn't know the case. The record has to be the record, hasn't it? I mean, there's not one standard for summary judgment if you have Judge Cooke as a judge and another standard if you have a different judge. Yes, Your Honor. And the defendants did attach to their motion for summary judgment the plaintiff's trial testimony. I would like to address a few quick things. I know time is short, if I may. In the judge's opinion, number one, first, I would like to express the fact that while sister counsel is complaining that we did not dispute the fact that Mr. Zucker may have been on the ground resisting or noncompliant, again, that's okay. He doesn't have to comply with unlawful conduct. He doesn't have to. So, of course, we didn't. When you have a motion for summary judgment that is properly made and supported, the opponent has an obligation to come forth and show that there are facts and show where those facts are. Does the judge have to go digging through the record to find those facts? Absolutely not, sir. That's correct, you know. But she did go digging through the record to pull things that weren't part of the motion to raise issues that nobody raised. No, no, no, no. I'm talking about the opponent of the motion for summary judgment. Who? Who with you or your predecessor or whoever was doing it has an obligation to come forth and say they said there were no genuine issue material facts. Wrong. Look here in this deposition where he said such and such. That would have possibly defeated that motion, but it wasn't presented in the response. Maybe Judge Cook might have known about it, but I'm hard to say what Judge Cook knew. Would that have been presented to him? One never knows about that. Yes, Your Honor, I agree with you. I would like to briefly with the remaining two and a half minutes address three particular points in the judge's opinion, which is docket number 74. She indicated at page 9 that plaintiff then turned around to go back in his home, which is when the police employed force to restrain him because he was going home. Not because he was reaching for a gun or yelling or screaming. They employed force to restrain him because he was going home. Number one, the judge acknowledged that. The judge further acknowledged that the proper standard about unlawful seizure and excessive force is whether a suspect poses an immediate threat to the safety of others. That's at page 12 in the first sentence. And then on page 13, she admits that a reasonable officer on the scene would have seen the following. A potentially armed and potentially mental ill man whose daughter called the police and professed to the warrior that he was a danger to anyone who confronted him. Now, the danger to anyone who confronted him is a conclusion of facts that the judge improperly drew, but a reasonable officer on the scene would have seen, okay, potentially armed, potentially mentally ill. Let's investigate. There's no immediate threat. No one even said he was pointing a gun or anything. He just happens to be a gun owner, happens to have a messy house. Is part of that argument focused toward the Michigan Mental Health Code as opposed to the Constitution? Well, I believe, honestly, that the Michigan Mental Health Code, I know that states... You do make some reference to that in the briefing, and I wasn't quite sure how you were dividing it. Right. States can expand upon the rights that we have, but they can't restrict them. And the Mental Health Code specifically says police officers must have firsthand observation, and it can be implied or imputed that that is specifically because we have a right to be free from unreasonable searches and seizures. And if you fail to follow to the letter of the law that particular statute, it's very foreseeable that a constitutional rights violation is going to occur. Is that because of the Constitution, you might say, on its own, or are you claiming a state created liberty interest? No, that is on the Constitution on its own basis. Okay, but then in that case, the fact they violated the Michigan Health Code would not by itself necessarily be a violation of the Constitution. No, the fact is that their policy misstates the law. The officers are trained that they can rely on other people. Not necessarily that they violated the statute, but that their policy misquotes the law. Do we have any questions? Thank you, counsel. The case will be submitted to the court. Court will be adjourned.